## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

TASHA SELLERS, Individually,                )
and as a Representative Heir of             )
MICHAEL D. SELLERS, Deceased,               )
and as Special Administrator of the Estate  )
of MICHAEL D. SELLERS, Deceased,            )
                                            )
            Plaintiff,               )
                                            )    Case No. 11-1340-JAR-KGG
vs.                                         )
                                            )
WESLEY MEDICAL CENTER, L.L.C.;              )
KATHY FORRED, M.D.;                         )
VALERIE AOUAD, P.A.; and                    )
EMERGENCY SERVICES, P.A.                    )
                                            )
            Defendants.              )
_____ )

## MEMORANDUM & ORDER

Now before the Court is Plaintiff's "Motion to Compel Defendant Wesley

Medical Center, L.L.C. to Respond to Rule 34 Discovery." (Doc. 78.) Having

reviewed the submissions of the parties and after a hearing at which both parties

made oral argument, the Court **GRANTS in part** and **DENIES in part** Plaintiff's

motion.

## BACKGROUND

Plaintiff alleges that the deceased, Michael Sellers, presented at Wesley Medical Center on November 27, 2009, complaining of chest pain.  (*See* Doc. 1.) Plaintiff further alleges that following examination and various tests, the deceased was released approximately 3 ½ hours later with a prescription for Pepcid.  (*Id*.) Plaintiff continues that the deceased collapsed in his home on December 5, 2009, and died on December 14, 2009, following bypass surgery.  (*Id*.)

Plaintiff brings the above-captioned matter seeking damages based on Defendant Wesley Medical Center's alleged violations of the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C.A. § 1395dd.  (*See*, Doc. 1, at 5-6.)  EMTALA requires that a hospital with an emergency department "must provide for an appropriate medical screening examination within the capability of the hospital's emergency department . . . to determine whether or not an emergency medical condition . . . exists" as to any individual requesting examination.  42 U.S.C.A. § 1395dd(a).  Plaintiff also brings pendant state law medical malpractice claims against all of the Defendants.  (*Id*., at 7-9.)

The Requests for Production at issue seek certain categories of documents from Wesley Medical center.  Following the parties' efforts at conferring – as well as a recent hearing before the Court and resulting communications between the

parties – Requests Nos. 15, 20, 30, 31, 41, 50, and 59 remain at issue.

## DISCUSSION

**A.     Standards for Motions to Compel**.

Fed.R.Civ.P. 26(b) states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . .  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  As such, the requested information must be both relevant and nonprivileged to be discoverable.

**1.     Relevance**.

"'Discovery relevance is minimal relevance,' which means it is possible and reasonably calculated that the request will lead to the discovery of admissible evidence."  ***Teichgraeber v. Memorial Union Corp. of Emporia State University***, 932 F.Supp. 1263, 1265 (D. Kan. 1996) (internal citation omitted).  "Relevance is broadly construed at the discovery stage of the litigation and a request for discovery should be considered relevant if there is any possibility the information sought may be relevant to the subject matter of the action."  ***Smith v. MCI Telecommunications Corp.***, 137 F.R.D. 25, 27 (D.Kan.1991).  Stated another way, "discovery should ordinarily be allowed unless it is clear that the information sought can have no possible bearing on the subject matter of the action."  ***Snowden***

*By and Through Victor v. Connaught Lab.*, 137 F.R.D. 325, 341 (D.Kan.1991), appeal denied, 1991 WL 60514 (D.Kan. Mar. 29, 1991).

Discovery requests must be relevant on their face. *Williams v. Bd. of County Comm'rs*, 192 F.R.D. 698, 705 (D. Kan. 2000). Once this low burden of relevance is established, the legal burden regarding the defense of a motion to compel resides with the party opposing the discovery request. *See Swackhammer v. Sprint Corp. PCS*, 225 F.R.D. 658, 661, 662, 666 (D. Kan. 2004) (stating that the party resisting a discovery request based on overbreadth, vagueness, ambiguity, or undue burden/expense objections bears the burden to support the objections).

Although the scope of discovery is broad, it is not unlimited. If the proponent has failed to specify how the information is relevant, the Court will not require the respondent to produce the evidence. *Gheesling v. Chater*, 162 F.R.D. 649 (D.Kan.1995). Even so, courts look "with disfavor on conclusory or boilerplate objections that discovery requests are irrelevant, immaterial, unduly burdensome, or overly broad." *Id.*, 650.

"Unless a request is overly broad, irrelevant, or unduly burdensome on its face, the party asserting the objection has the duty to support its objections." *Sonnino v. University of Kansas Hosp. Authority*, 221 F.R.D. 661, n. 36 (D.Kan.2004) (citing *Hammond v. Lowe's Home Ctrs., Inc*., 216 F.R.D. 666, 670

(D.Kan. 2003)); ***Cont'l Ill. Nat'l Bank & Trust Co. of Chicago v. Caton***, 136

F.R.D. 682, 685 (D. Kan. 1991) (stating that a party resisting a discovery request

based on relevancy grounds bears the burden of explaining how "each discovery

request is irrelevant, not reasonably calculated to the discovery of admissible

evidence, or burdensome").  Thus, "the objecting party must specifically show in

its response to the motion to compel, despite the broad and liberal construction

afforded by the federal discovery rules, how each request for production or

interrogatory is objectionable."  ***Sonnino***, 221 F.R.D. at 670–71 (internal citation

omitted).

     **2.**    **Claim of privilege**.

     Even assuming the Court finds the discovery requests at issue to be relevant,

the requested documents must also not be privileged to be discoverable.  Federal

Rule of Evidence 501 governs the application of privilege in federal courts, and

states that

> [t]he common law – as interpreted by United States
> courts in the light of reason and experience – governs a
> claim of privilege unless any of the following provides
> otherwise:
>
> •     the United States Constitution;
>
> •     a federal statute;
>
> •     or rules prescribed by the Supreme Court.

Plaintiff filed the present lawsuit in federal court based on the alleged violation by

Defendant Wesley Medical Center of a federal statute, EMTALA.  The Act does

not contain a privilege provision nor is there a federal law peer review privilege.

***Sonnino v. University of Kansas Hosp. Auth***., 220 F.R.D. 633, 644 (D. Kan.

2004) (holding that "[n]either the Supreme Court nor the Tenth Circuit has

recognized a medical peer review or medical risk management privilege under

federal common law").

As stated above, however, Plaintiff also brings a pendant state law medical

malpractice cause of action against all Defendants.  In response to certain

discovery requests at issue, Defendant has asserted the peer review/risk

management privilege, which has been codified by the Kansas legislature at K.S.A.

§ 65-4915, *et seq*.  That statutory scheme provides, in relevant part:

> the reports, statements, memoranda, proceedings,
> findings and other records submitted to or generated by
> peer review committees or officers shall be privileged
> and shall not be subject to discovery, subpoena or other
> means of legal compulsion for their release to any person
> or entity or be admissible in evidence in any judicial or
> administrative proceeding.  Information contained in
> such records shall not be discoverable or admissible at
> trial in the form of testimony by an individual who
> participated in the peer review process.

K.S.A. § 65-4915(b).

The issue thus before the Court is whether and/or how the Kansas state court

statutory peer review privilege applies to Plaintiff's federal and pendant state law claims in federal court.  "It is well settled that in federal question cases with pendent state law claims, the federal court must look to the federal common law regarding the existence of privileges.  *Reliastar Life Ins. Co. v. Warrior*, No. 06-2486-CM-DJW, 2007 WL 2669558 (D.Kan. Sept. 7, 2007) (citing *Ledbetter v. City of Topeka, Kan.*, No 99-2489-CM, 2001 WL 311196, at *2 (D. Kan. Mar. 7, 2001); *Ali v. Douglas Cable Commc'ns Ltd. P'ship*, 890 F.Supp. 993, 994 (D. Kan. 1995)).  Further guidance is provided in the recent decision of *Hermann v. Rain Link, Inc*. from this District.

> In *Sprague v. Thorn Americas*, the Tenth Circuit found that when both federal law claims and pendent state law claims were implicated, the court should consider both bodies of law.  [129 F.3d 1355, 1369 (10th Cir. 1997).]  In that case, however, the litigants did not focus on any distinction between federal and state law.  The opinion also reiterates that when a case involves both federal claims and pendent state law claims, 'as to the state causes of action, a federal court should look to state law in deciding privilege questions.' [*Id*., at 1368 (internal citation omitted).] Obviously, the court and litigants are not always able to parse out what discovery or evidence supports a federal claim as opposed to a state claim.

No. 11-1123-RDR, 2012 WL 1207232, at *8 (D. Kan. April 11, 2012).

As stated previously, the present case comes before the Court because of a cause of action arising under EMTALA, a federal statute.  A pendant state court

cause of action is also alleged.  The parties briefs do not necessarily discuss

whether certain evidence at issue relates to Plaintiff's EMTALA claim or the state

court medical malpractice claim, or both.  Thus, the Court will attempt to make the

determination.  In so doing, the Court holds that evidence relating only to

Plaintiff's federal claim will not be subject to assertions of the Kansas statutory

peer review privilege, to the extent Plaintiff has adequately opposed the application

of the privilege, as no such privilege has been recognized by the Tenth Circuit or

U.S. Supreme Court.  ***Sonnino***, 220 F.R.D. at 644.  On the other hand, evidence

relating only to Plaintiff's pendant state law cause of action will be subject to the

privilege to the extent it was adequately asserted by Defendant.  Finally, to the

extent evidence relates to both the federal and state law causes of action, the

privilege will not apply to the extent it was adequately opposed by Plaintiff.

**B.      Requests for Production at Issue**.

      **1.      Request No. 15**.

Request No. 15 seeks the "Emergency Department medical staff section

committee meeting minutes from 2008 to present."  (Doc. 78-3, at 4.)  Defendant

objects that these minutes "are part of Wesley's Peer Review and Risk

Management Program, thus are protected by K.S.A. 65-4915 and K.S.A. 65-4925."

(*Id*.)  Defendant also raises a relevance objection "as neither Michael Sellers, or his

care, are mentioned in any of the notes." (*Id.*)  Finally, Defendant objects to the

relevance of any notes created after November 27, 2009 (the date the deceased was

seen in the emergency room).  (*Id.*)

The Court finds that Plaintiff's request, as written, is not relevant on its face

because of the sheer overbreadth of the request.  A request for production of

documents is "overbroad" if the description of the subject matter sought is so

general (or nonexistent) that the request, if honored literarily, would result in the

production of irrelevant documents, <u>and</u> if the request unfairly shifts the burden to

the respondent to determine what is relevant within the request or to guess what the

requestor is actually seeking (*e.g.*, a request that a defendant produce copies of all

his e-mails).

An overly broad request may be, but is not necessarily, vague – the intent of

the request may be clear from its verbiage.  Also, an overly broad request may be,

but is not necessarily, unduly burdensome.  For example, a respondent may be able

to comply with a request to provide a disk copy of all documents on his computer

hard drive with little effort – yet such a request remains patently overly broad in its

scope.  A requestor is not permitted to simply ask for all documents in a parties'

possession, then thumb through and to determine for himself what might be

relevant or, through a motion to compel and request for *in camera* inspection,

expect a court to do so.  A request must be devised in such a way that fairly targets documents "relevant to any party's claim or defense."  Fed. R. Civ. Proc. 26(b)(1).

The open-ended nature of Request No. 15 implicates too many potential subjects and Plaintiff has failed to provide the Court with a compelling argument to the contrary.  Defendant's objection is **sustained** and the portion of Plaintiff's motion relating to Request No. 15 is **DENIED**.

### 2.    Request No. 20.

This request seeks "[a]ll emergency department or committee records, meeting minutes, and documents that discuss EMTALA compliance, 2002 to present." (Doc. 78-3, at 6.)  Defendant Wesley objected in response on grounds of overbreadth, burdensomeness, and irrelevance.  (*Id.*)  Defendant also objects "to providing any Ethics and Compliance Committee meeting records or minutes as violating peer review and risk management privilege."  (*Id.*)

The Court finds that any implicated documents referring to EMTALA or discussing "legal compliance" regarding patient emergency room screening procedures, as to any medical condition, are discoverable.  Such documents would clearly relate to Plaintiff's federal EMTALA claim and, therefore, not be protected by the state peer review/risk management statute.  The Court does not limit this holding to documents relating only to patients exhibiting chest pain.  Other

10

conditions could provide relevant evidence as to how screening procedures are developed by Defendant.

The Court further overrules Defendant's blanket objection to documents created after November 27, 2009 – the date Plaintiff presented at Wesley's emergency room.  Even so, the Court acknowledges that any relevance to policies existing/created, and events that occurred, in 2009 diminishes as time extends beyond that date.  As such, the Court will order the production of all such documents created on or before December 31, 2011.  Plaintiff's motion is **GRANTED in part** and **DENIED in part** as to Request No. 20.

> **3.**    **Requests Nos. 30 and 31**.

These requests relate to files maintained by Defendant regarding Defendant Kathy Forred, M.D. and Defendant Valerie Aouad, P.A., including documentation regarding staffing privileges, credentialing, investigations, complaints, and contracts.  (Doc. 78-3, at 9-10.)  Defendant objects based on overbreadth and relevance as to documents created after November 27, 2009.  (*Id*.)  For the reasons set forth above, this objection is overruled regarding documents created on or before December 31, 2011.

Defendant further objects that documents related to patient complaints are irrelevant and continues that "portions of credentialing files and entire Quality file"

11

are protected by the peer review/risk management privilege.  Even so, Defendant

has produced various credentialing documents, as well as information regarding

training and the contracts at issue.

The Court finds that Plaintiff has not rebutted that the privilege applies to the

remaining documents and has not shown how the remaining documents are related

to the EMTALA claim.  To the contrary, the documents at issue appear to be

relevant only to Plaintiff's negligence claims and, therefore, subject to protection

from discovery under the state statutory privilege.  However, to the extent a

document discusses screening procedures on patient(s) presenting with chest pain,

regardless of whether the screening procedure was followed, any such documents

currently being withheld by Defendant under a claim of privilege are to be

produced.  Plaintiff's motion is **GRANTED in part** and **DENIED in part** as to

Requests No. 30 and 31.

**4.    Request No. 38**.

Request No. 37, which is not at issue in this motion, sought all EMTALA

policies and procedures applicable on November 27, 2009.  (Doc. 78-3, at 11.)

Request No. 38, which *is* at issue, ask for copies of policies and procedures

"demonstrat[ing] any changes, edits, additions, or modifications of the items

produced in response to" Request No. 37.  (*Id*.)  Defendant objects on the bases of

overbreadth, burdensomeness, and irrelevance "to Michael Sellers' care given on

November 27, 2009 . . . ." (*Id.*)

The Court **overrules** Defendant's objection and orders the production of any

edits to the documents produced in response to Request No. 37 that occurred up to

and including December 31, 2011.  Evidence of changes to these policies and

procedures is relevant to the policies themselves.  Also, any edits raise the issue of

whether Defendant wanted to change the procedure followed by medical staff

versus whether it changed its policy to conform to what the medical staff was

already doing.  Both are relevant to Defendant's underlying policies.  Plaintiff's

motion is **GRANTED** as to Request No. 38.

### 5.     Request No. 41.

Request for Production No. 41 seeks annual reports for the "Emergency

Department and/or STEMI/ACS Collaborative Team" from 2005 to the present,

"including those that explain the rationale for ACS management based upon

interpretation and local implementation of the medical literature, including all

reports that focus upon 'risk scores,' 'assessment tools' and 'risk stratification' in

the ED 'chest discomfort' patient."  (Doc. 78-3, at 12.)  Defendant objects that the

time frame of the request is overly broad, seeks irrelevant information and

"invades the peer review and risk management privileges as asserted in the

Privilege Log herein."  (*Id.*) Defendant also objects "to production of the Chest

Pain Center Steering Committee and Cardiovascular Team Meeting minutes as

constituting Peer Review and Risk Management Privilege."  (*Id.*)

The Court finds that the information implicated by this request is closely

enough related to the EMTALA screening claim to potentially result in relevant

information.  As such, the state statutory privilege does not apply.  Plaintiff's

motion is **GRANTED** as to Request No. 41.

     **6.**     **Request No. 50**.

Request No. 50 seeks all rules and guidelines "received from or authored or

co-authored by defendant Emergency Services, P.A."  (Doc. 78-3, at 15.)

Defendant objects to the temporal and subject matter breadth of the request.  (*Id.*)

Defendant also objects that the request implicates documents protected by the state

statutory peer review and risk management privileges.  In response to Defendant's

objections, Plaintiff has restricted the request "to 'rules, protocols, standards of

care, guidelines, or other similarly termed documents in the possession, custody, or

control of this defendant and received from or authored or co-authored by

defendant Emergency Services, P.A.' which address EMTALA and/or a patient

presenting with chest discomfort in the ED."  (Doc. 78, at 34.)

For reasons set forth previously, the Court finds that any such documents

produced from 2004 through December 31, 2011, are to be produced.  Documents

included in Defendant's privilege log, however, need not be produced because

Plaintiff failed to challenge the privilege in this motion to compel.  The motion, as

written, focuses "QUEAS-E updates," with no discussion of the other types of

documents.  (*See* Doc. 78, at 34-35.)  According to Plaintiff, the QUEAS-E

documents are no longer at issue.  Therefore, arguments regarding any other types

of documents, such as the annual ER quality book, have been waived by Plaintiff's

failure to address them in the motion.  Plaintiff's motion is **GRANTED in part**

and **DENIED in part** as to Request No. 50.

      **7.**    **Request No. 59**.

      This request seeks documents discussing or referencing "the consideration,

development, or institution of any policy to not have cardiologists over-read EKG

results obtained in the emergency department or elsewhere in the hospital."  (Doc.

78-3, at 17.)  Defendant Wesley objects on the basis of  relevance, temporal

breadth, and because the request is "not restricted to the Emergency Department

where Michael Sellers received care."  (*Id*.)  Defendant also raises the peer review

and risk management privilege.  (*Id*.)  In the motion to compel, Plaintiff expresses

a willingness "to narrow this request to the emergency department" and now

"seeks production of those minutes relating to the cardiology over-reads with other

topics redacted." (Doc. 78 at 37.) As such, Defendant's relevancy objections are satisfied and the only issue remaining is whether meeting minutes discussing cardiologist over-reads are covered by the Kansas peer review or risk management privileges.

At the hearing, Defendant argued that to the extent this topic is relevant, it is more appropriately raised as a line of deposition questioning as opposed to a Rule 34 document request. Regardless of which discovery method is more "appropriate," it is Plaintiff's prerogative to choose the method of discovery she prefers.

> Parties may choose the manner and method in which they conduct discovery. The Federal Rules provide several vehicles for discovery. Parties may choose their preferred methodology. Courts generally will not interfere in such choices.

*White v. Union Pac. R. Co*., No. 09-1407-EFM-KGG, 2011 WL 721550, at *2 (D. Kan. Feb. 22, 2011) (citing *McCloud v. Board of Geary County Com'rs*, No. 06–1002–MLB, 2008 WL 3502436, at *2 (D.Kan. Aug. 11, 2008); *Audiotext Communications Network, Inc. v. U.S. Telecom, Inc*., No. 9402395–GTV, 1995 WL 625962, at *5 (D.Kan. Oct. 5, 1995)).

Further, the Court finds that, based on the information in the parties' briefs and presented by way of oral argument at the hearing, the subject of over-reads

could potentially be part of the EMTALA screening process.  Thus, within

Plaintiff's self-imposed limitations, the Court **GRANTS** Plaintiff's motion as to

Request No. 59.


      **IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel (Doc.

78) is **GRANTED in part** and **DENIED in part** as more fully set forth herein.

The documents to be produced by Defendant Wesley in compliance with this Order

shall be provided to Plaintiff's counsel on or before November 21, 2012.

      Dated at Wichita, Kansas, on this 31st day of October, 2012.


           s/ KENNETH G. GALE
          KENNETH G. GALE
          United States Magistrate Judge